## SCRUGGS v. McGEHEE.

[69 South. 1003.]

FRAUDS, STATUTE OF. *Tenancy from year to year. Landlord and tenant. Termination of tenancy. Notice to quit. Necessity.*

Where a tenant entered upon the rented premises in pursuance of an oral agreement and as a lessee of the landlord and executed and delivered his five annual rent notes and paid the periodical rent agreed upon for four years without question, in such case regardless of the statute of frauds, a periodical tenancy was created, and the tenant became a tenant from year to year, and a purchaser who bought the land during the last year of the term could not dispossess the tenant without giving two months' notice in writing to terminate the tenancy as required by Code 1906, section 2882.

APPEAL from the circuit court of Bolivar county.
HON. DAN BREWER, Special Judge.
Suit by James G. McGehee against William Scruggs.
From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Fontaine Jones* and *Green & Green*, for appellant.

*Marcus L. Kaufman* and *Mayes & Mayes*, for appellee.

STEVENS, J., delivered the opinion of the court.

This is an action of unlawful entry and detainer, instituted by appellee as plaintiff against appellant for the recovery of the possession of a portion of a plantation purchased by Mr. McGehee from one Dr. J. E. Givhan. The record discloses that Doctor Givhan was the owner of the land in question in the year 1908, and that he leased

the same to William Scruggs, appellant, for a term of five years, at an annual rental of seven hundred dollars per annum; that he accepted the five promissory notes executed by appellant, each for the sum of seven hundred dollars, evidencing the consideration of such rental; that this lease was not evidenced by writing other than the said promissory notes; that in pursuance of said understanding appellant entered upon the premises in question as a tenant of Dr. Givhan, and had so occupied the land for four years, and paid four of the rent notes, when in December, 1912, Dr. Givhan sold and conveyed by general warranty deed the premises in question to appellee, James G. McGehee. The conveyance to McGehee bears date December 28, 1912, and makes no reference whatever to the occupancy or tenancy of appellant, who was then in possession, claiming the farm for the year 1913, the last year of his alleged five-year term. The fifth promissory note, covering the rent for the year 1913, was by Dr. Givhan transferred and assigned to appellee without recourse, after the execution and delivery of his deed of conveyance. After appellee was invested with the legal title under his deed, and on December 30, 1912, he served notice on appellant to vacate the premises and deliver up possession to appellee as the purchaser and owner. On failure of appellant to deliver possession, appellee instituted this action for the recovery of possession. The case was tried out in the unlawful entry and detainer court, and appealed to the circuit court, where the trial judge, a jury being waived, heard the case on pleadings and proof, and entered judgment in favor of the plaintiff and against the tenant. From this judgment, appellant appeals to this court.

On the trial of the case appellant presented a motion for a continuance, based upon the absence of Dr. J. E. Givhan and one R. S. McKnight, alleged material witnesses in his behalf, and thereupon the plaintiff admitted that the witnesses named, if present, would tes-

tify to the facts set forth in the affidavit and motion for
a continuance.. Mr. McGehee as a witness in his own be-
half testified that he contracted to buy the land in ques-
tion in November, but that the deal was not closed until
December 28, 1912; that he did not know appellant had
executed a promissory note for the rent  of 1913,  but
said, "I knew that, if he remained on the property un-
der his lease, whatever the rent would be I would get
it;" that he knew appellant was claiming under a five-
year lease; that Dr. Givhan, the vendor, did not exhibit
any written lease, but "he simply spoke of a lease,
.  .  .  that the lease was in existence, and he sold the
property subject to this five-year lease;" that "I thought
he (appellant) had a five-year lease on it," and that Dr.
Givhan so informed him.  He testified, further, that Dr.
Givhan did not deliver the promissory note in question
when the deed was delivered, but did afterwards mail
him the note, with the indorsement thereon, and this
note, which was exhibited by plaintiff on the trial of the
suit, was read, and is as follows:

"Gunnison, Miss., 12/3/1908.

"$700.00.  On the 1st November, 1913, I promise to
pay Dr. J. E. Givhan seven hundred dollars for rent dur-
ing the year 1913 of one hundred and forty acres of land
more or less.  Said land is situated in the state of Miss.,
Bolivar county, and on Dr. J. E. Givhan's plantation on
Bogue Phalia, lying on the west side of Bogue and locat-
ed on east half of northwest quarter 23—24—7, and on
the northeast quarter of 23—24—7. This note draws ten
per cent int. per annum. after maturity.

"[Signed]                    Will Scruggs."

Indorsed on the back as follows:

"For value received I transfer the within note to Jim
G. McGehee without recourse on me.

"[Signed]                    J. E. Givhan."

The note seems never to have been delivered up to the
tenant, or even tendered him.  The written application

for continuance recites, among other things, that if Dr. Givhan were present he would testify that:

"He had rented the land in controversy to defendant for a term of five years, and had taken defendant's five notes, one for each year, in consideration of such rental, each for the sum of seven hundred dollars, which notes were transferred to said plaintiff, as such purchaser, with the understanding between said Givhan and plaintiff at the time of such transfer that defendant was to hold possession of said land for said term of five years."

It seems from the briefs of counsel on both sides that the decision of the lower court was based upon the proposition and holding of the trial judge that the lease in question was within the statute of frauds and void, and that the possession of appellant thereunder was not protected. It is contended, among other points, by counsel for appellant, that the note in question sufficiently described the land and stated the material terms of the agreement, and that this note, coupled with the indorsement or signature of J. E. Givhan in assigning the note to appellee, constituted a sufficient memorandum; that, regardless of the question whether the lease contract is valid or invalid as between the original parties, appellee, having purchased subject to the unexpired lease, and with full understanding of the claim and rights of appellant, ratified the contract between Dr. Givhan and appellant, and thereby accepted appellant as his tenant for the balance of the term. It is further contended by appellant that appellee is in no position to complain; the original parties having elected to keep faith one with the other and to perform the invalid oral lease, and appellee purchasing with full knowledge of the facts. The proceedings were instituted before the justice of the peace January 31, 1913.

There is one question which is controlling in this case and is decisive of this appeal. Conceding for the present that the agreement between Dr. Givhan and appellant is

within the statute of frauds, yet the record shows conclusively that appellant entered upon the premises in pursuance of the oral agreement and as a lessee of Dr. Givhan; that he executed and delivered his five annual rent notes and paid the periodical rent agreed upon for four years without question, and such being the case a periodical tenancy was created, and appellant became a tenant from year to year.

"Where a lessee enters into possession under an invalid lease and pays a periodical rent, a periodical tenancy is created, as a general rule. . . . The provision of the statute that a lease not complying with the statute shall be 'void' is sufficiently complied with by holding the lease invalid as creating a tenancy for years, and will not prevent a periodical tenancy from arising by entry and payment of rent thereunder." A. & E. Ency. of Law (2d Ed.), vol. 18, pp. 194, 195, and authorities cited in the notes.

"As a general rule, a parol lease of lands for years is construed as creating only a tenancy at will, unless under the saving clause of the statute of frauds it may be good for a year. Such tenancy, however, will be subsequently changed into a tenancy from year to year, by payment and acceptance of the rent annually, and by other circumstances indicating that to be the intention of the parties, so that the almost universal rule at present is that a parol lease for years, under which possession is taken and rent paid, creates a tenancy from year to year." Cyc. vol. 24, p. 1030.

"The most frequent case of tenancy from year to year is that of a holding under a lease which fails to comply with the statute of frauds; the tenancy at will, which would otherwise exist in such case, becoming a tenancy from year to year by reason of the payment of an annual rent." Tiffany on Landlord and Tenant, vol. 1, p. 128.

Mr. Tiffany asserts this to be the universal rule, except where a statute provides otherwise, calling attention, for

instance, to the statutory provisions in Maine and Massachusetts providing that an oral lease shall create a tenancy at will only. It has been repeatedly declared by the courts that statutes of frauds were never designed as instruments of oppression. The lessee under a void parol lease has certain rights which the courts should not sweep away.

The tenancy in the instant case being, therefore, one from year to year, our statute (section 2882, Code 1906) requires two months' notice in writing to be given to terminate such tenancy. The record affirmatively shows in this case that no such notice was given, and appellant therefore held over in the year 1913 as a lawful tenant for that year, and could not be dispossessed either by the original vendor or the vendee of the premises, in the absence of such legal notice. The statute requiring two months' notice is a righteous provision of the law, intended to afford the tenant time, under just such circumstances as are disclosed by this record, to change his plans and to make other needed arrangements for himself, his family, and his possessions. A contrary holding would authorize an unscrupulous landowner to turn a helpless tenant out of doors in the middle of a crop year, and place a premium upon fraud and oppression.

The record affirmatively shows that appellee had no right to the immediate possession of the premises in question at the time he instituted this action, and, this being true, the judgment of the court below should be reversed, and the cause dismissed. We decide no other question in the case.

*Reversed and dismissed.*